**FILED**

JUL 2 9 2005

**NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WEDONNA L. MORRIS )
3636 16th Street, N.W. )
B 1014 )
Washington, D.C. 20010 )
202-234-8355 )
)
)
Plaintiff, )
)
GALE A. NORTON, SECRETARY )
U.S. DEPARTMENT OF THE INTERIOR )
1849 C Street, N.W )
Washington, D.C. 20240 )
202-208-7351 )

Defendant.

CASE NUMBER  1:05CV01496

JUDGE: Reggie B. Walton

DECK TYPE: Employment Discrimination

DATE STAMP: 07/29/2005

JURY ACTION

COMPLAINT FOR MONETARY DAMAGES
AND OTHER RELIEF (DISCRIMINATION)

I.   JURISDICTION

1.  This Court has jurisdiction pursuant to Section 717(c) and Section 706(f)(3) of

Title VII of the Civil Rights Act of 1964, as amended by Public Law 92-261 of 1972, 42

U.S.C. 2000e-16(c) and 2000e-5(f)(3) and 28 U.S.C. 1331 and 1343(a)(4) and Public

Law 102-166 of 1991, 42 U.S.C. 1981a(c).

2.  The unlawful employment practices described herein concern actions taken by

the Department of the Interior, (DOI), Office of the Inspector General (OIG) located in

Washington, D.C.  Venue in the Court is proper pursuant to Section 706(f)(3) of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(f)(3) and 42 U.S.C. 1981a(c).

II.   PARTIES

3.  Plaintiff Wedonna L. Morris is an African American female, a citizen of the

United States and a resident of the District of Columbia. Plaintiff is a person aggrieved

1

and a former federal employee within the meaning of Section 701(f) and Section 717(a)

of Title VII, 42 U.S.C. 2000e-5(f) and 16(a).

4. Defendant Gale A. Norton is Secretary, United States Department of the Interior.

(DOI). She is sued in her official capacity as head of the Department and, as such, is

amenable to suit as provided in Section 717© of Title VII, 42 U.S.C. 2000e-

III.    NATURE OF CASE: CLAIM

5.    This action seeks compensatory damages and other relief for continual

Intentional discrimination against the Plaintiff based on her race, sex, color, and reprisal

for involvement in prior protected EEO activity pursuant to Section 102(a)(1) and (b) of

the Civil Rights Act of 1991, and declaratory, injunctive and other equitable relief from

discrimination in employment against the Plaintiff based on race, sex, color, and reprisal.

6.    Defendant took adverse employment actions against Plaintiff on the basis of

race, sex, color, and reprisal in violation of Section 703(a)(1) and (2) and Section 704(a)

of Title VII, 42 U.S.C. 2000e-2(a)(1) and (2) and 42 U.S.C. 2000e-3, and Section 2302 of

Title One of the Civil Service Reform Act of 1978, as amended, 5 U.S.C. 2302(b) et seq,

and 5 C.F.R 4.2.

IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.    On October 25, 2002, Plaintiff timely contacted and EEO counselor pursuant

to 29 C.F.R.1614.105.  Plaintiff complained to the counselor that she had been

discriminated against on the basis of her race, sex, color and reprisal.

8.    On December 26, 2002, Plaintiff timely filed a formal administrative complaint

with the Defendant, Case No. 0S-03-007.

9. On September 10, 2003, Plaintiff's complaint was amended to include her final notice of termination from federal service dated August 28, 2003.

10. Defendant assigned Plaintiff's EEO complaint to an investigator. The Report of Investigation (ROI) was issued to the Plaintiff on or about February 4, 2004.

11. Plaintiff requested an administrative hearing before the U.S. Equal Employment Opportunity Commission (EEOC) on March 16, 2004. The EEOC Administrative Judge issued the Acknowledgement and Order on June 23, 2004.

12. The EEOC Administrative Judge issued Order granting Defendant's motion for summary judgment on March 16, 2005.

13. The Defendant issued Final Order adopting the EEOC's Order on April 28, 2005.

14. Pursuant to 42 U.S.C. 2000e-16c Plaintiff has exhausted her administrative remedies.

V.   FACTS

15. Prior to her termination from federal service, Plaintiff was a career federal employee employed by the U.S. Department of the Interior, Office of the Inspector General (OIG), Investigations Division as an Investigative Analyst, GS-12. Plaintiff had over twenty two (22) years of federal service and had been in the OIG, Investigations Division since 1989.

16. Earl Devaney is a white male with no prior participation in protected EEO activity. Since approximately January 2000, Devaney has served as the Inspector General, DOI. Devaney, through his agents, David Montoya, Assistant IG, Paul Okerberg, Special Agent in charge, et al, engaged in a systematic pattern of

3

discrimination and reprisal against Plaintiff in retaliation for Plaintiff's filing an EEO complaint in March 2000. Devaney and his agents have an established pattern of discriminatory and retaliatory actions against African Americans employees within the OIG in general and specifically within the Investigations Division. Devaney's discrimination against the Plaintiff and other African Americans within the Investigation Division of the OIG has resulted in a significant decrease in the representation of African American employees. When Devaney assumed the position of OIG in 2000 there were approximately fifteen African Americans within the Investigations Division, six of who were managers. Devaney, through his agents, had removed, reassigned or otherwise forced to leave, over twelve of those employees by January 2003.

17. Plaintiff filed an EEO discrimination complaint in February 2000, which was settled in March 2000. Shortly after settlement of her complaint, Plaintiff was subjected to a series of disparate, discriminatory actions. From 1989 until just prior to filing her EEO complaint, Plaintiff had been in the same position within the Investigations Division, OIG. Subsequent to raising her EEO issues and filing her EEO complaint, Plaintiff was reassigned five times and treated as the office pariah. In the Fall of 2000 Plaintiff had called in sick. Defendant, through its agents sent two senior personnel, one an investigative agent, to Plaintiff's home to inquire about her whereabouts under the pretext that they did not have her phone number. In fact, Plaintiff's current phone number was in her official personnel file, Plaintiff had never had an issue with her time and attendance, and the OIG had never taken this extraordinary measure with another OIG employee.

18. Plaintiff had worked in the Hotline Coordinator position for over twelve years as a GS-12 Investigative Analyst. Plaintiff had never seen or processed any classified material during that time frame. Eight OIG employees to include special investigative agents and Plaintiff's former supervisor have given declarations attesting to the fact that they never accessed or saw any classified material in the OIG while employed by that office.

19. Plaintiff made numerous requests to have her position upgraded to a GS-13 Investigative Analyst based on an increase in the duties of her position. Defendant repeatedly denied Plaintiff's request. Subsequent to Plaintiff's reassignment in August 2002, Ms. Linda Moon, white, GS-13 was reassigned into Plaintiff's former position as Hotline Coordinator.

VI.   COUNT ONE

PLAINTIFF WAS DISCRIMINATED AGAINST ON THE BASIS OF RACE SEX, COLOR, AND REPRISAL WHEN SHE WAS PLACED ON ADMINISTRATIVE LEAVE BY HER SUPERVISOR, PENDING AN INQUIRY INTO ISSUES SURROUNDING A POSITIVE DRUG TEST AND INFORMATION ON AN SF-86 FORM.

20. On approximately June 18, 2002, Plaintiff applied for a GS-13 position at another agency, the U.S. AID. Pursuant to USAID's preemployment process, Plaintiff was required to report for a drug test and complete a Standard Form 86, Questionnaire for a National Security Position. Plaintiff was informed that she had three days, July 10 through July 12, 2002 to report for the drug test. Plaintiff reported to the collection site at

2:00 p.m. on July 11, 2002. On July 25, 2002, Plaintiff received a telephone call from a

representative at the collection site that she had tested positive for a marijuana metabolite.

Plaintiff was informed she could take a retest using the same specimen and declined to do

so because she was concerned the original specimen was tainted.

    21.  By letter dated September 10, 2002, Defendant's agent, Mr. Stephen Supren,

Security Officer, OIG, made an unofficial inquiry of the USAID concerning any drug test

results or other background information USAID may have on Plaintiff.  Letter dated

September 12, 2002 informed Defendant informed that Plaintiff had tested positive for

marijuana.  On September 16, 2002 Plaintiff was accosted in the parking lot outside her

OIG office by Defendant's agent Paul Okerburg and Special Agent Theresa Price and

presented with a letter placing Plaintiff on administrative leave.  The letter stated Plaintiff

was placed on administrative leave because she failed a drug test and falsified her

Standard Form 86 when she had responded in the negative concerning use of illegal

drugs. Plaintiff was told by Okerburg to surrender her keys, passwords, and all other OIG

credentials and not to attempt to enter a DOI building. Neither Okerburg nor Special

Agent Price informed Plaintiff of her rights under the employee assistance program.

Defendant by letter dated September 16, 2002, placed Plaintiff on administrative leave.

Defendant by letter dated October 1, 2002 also informed Plaintiff her national security

clearance was being revoked.

    22.  Plaintiff has never used illegal drugs and was shocked when informed she had

tested positive.  Plaintiff did not falsify her Standard Form 86 because she answered

truthfully to the question concerning use of illegal drugs.  During her twelve years of

employment in the Investigations Division, OIG Plaintiff had been in a random drug

6

testing pool and had never tested positive for an illegal substance. Plaintiff did not submit to a retest by the same collection site that had done the original test, because Plaintiff believed that the original specimen might have been tainted. Plaintiff sought out a reputable collection site for a retest, and retested negative on September 18, 2002.

23. Plaintiff, based on information and belief, knows of other similarly situated individuals within the DOI who had not been involved in prior protected EEO activity, and who had failed drug tests and were not placed on administrative leave or treated in a manner similar to Plaintiff. Plaintiff, based on information and belief, knows of other similarly situated employees within the OIG who had not been involved in prior protected EEO activity and who engaged in behaviors that compromised their integrity, trust, and judgment, e.g. misuse of government credit cards and government vehicles, and who were not placed on administrative leave. Plaintiff, based on information and belief knows that one individual involved in the misuse of a government vehicle was Mr. Okerberg, Plaintiff's former supervisor.

24. Plaintiff, based on information and belief knows of a senior level manager within the OIG who in approximately November 2004, was arrested for theft and attempting to return stolen goods for monetary gain, and who was not placed on administrative leave. In this instance the Defendant elevated the senior level manager in status within the OIG.

25. Defendant placed Plaintiff on administrative leave to retaliate against her for her prior involvement in protected EEO activity and to discriminate against her based on her race and color. Defendant's rationale that it acted out of a concern for national security is

pretext for discrimination, because Defendant other employees similarly situated to Plaintiff, who have not engaged in protected EEO activities and who committed violations of law and were not placed on administrative leave.

VII.  COUNT TWO

PLAINTIFF WAS DISCRIMINATED AGAINST BASED ON RACE, COLOR, SEX, AND REPRISAL WHEN ON AUGUST 18, 2002, SHE WAS GIVEN A DIRECTED REASSIGNMENT TO THE EASTERN REGION OFFICE IN HERNDON, VIRGINIA .

26.  Plaintiff informed Defendant's agent David Montoya on July 3, 2002 that she had been tentatively selected for the position at USAID but that nothing was final.  On July 29, 2002 Defendant informed Plaintiff that she was being reassigned to the Eastern Region in Herdon, Virginia.  Plaintiff was also informed that Linda Moon, a white female, GS-13, was replacing her as the Hotline Coordinator.  Defendant issued Plaintiff a letter on August 9, 2002 directing her reassignment citing it was to more efficiently and effectively allocate resources.  Plaintiff informed Defendant that since she had not been selected to the position at the USAID she wanted to remain in her official position of record, the Hotline Coordinator position, since it was now being upgraded.  Plaintiff also indicated that the directed reassignment was also a hardship since it would require her to drive an additional twenty-five miles each way to the Herndon, Va. Office.  Defendant denied Plaintiff's request.

27.  Defendant's reassignment of Plaintiff to the Eastern Region office for reasons of "efficiency" and "effectiveness" was spurious because there was no position for Plaintiff within the Eastern Region.  When Plaintiff reported to the position in Eastern

8

Region she was provided any resources or support necessary to perform her new position

of Investigative Analyst, GS-12. Upon her arrival to the Eastern Region office Plaintiff

was informed by her new supervisor, Paul Okerberg that he didn't know why she was

there because he already had an Investigative Analyst and didn't need another one.

Plaintiff was not given a key to enter the Eastern Region building, Plaintiff was told to

find a computer from a pile of old surplus equipment, Plaintiff was not permitted to

access the data base necessary to perform her new position, and Plaintiff was assigned

space that was still being used for surplus desks and other boxes.

28. Defendant's agent David Montoya knew when he reassigned Plaintiff to

the Eastern Region that there was no position for her, and that he intended to place

her on administrative leave. Defendant reassigned Plaintiff from her administrative

position as Hotline Coordinator, which required no access to classified or sensitive

information to a position as Investigative Analyst that would have exposed Plaintiff

to sensitive information. Defendant's action was motivated by discriminatory

animus toward Plaintiff, and an intent to bolster Defendant's argument that

Plaintiff's position of record at the time of her placement on administrative leave

required access to sensitive information. Defendant's action is contradictory in

light of Defendant's professed concern for national security.

29. Plaintiff had repeatedly requested that her position as Hotline Coordinator

be upgraded to a GS-13 and Defendant had told Plaintiff it could not be done. The

fact that Defendant acted so quickly to replace Plaintiff with a white female GS-13

demonstrates that Defendant could have upgraded Plaintiff but did not because of

Defendant's discriminatory and retaliatory animus toward Plaintiff as a black

9

female who had filed an EEO complaint against Defendant.. Plaintiff has an

outstanding work record with commendations and awards from managers within

OIG and the DOI for her work as the Hotline Coordinator.

VIII.    COUNT THREE

PLAINTIFF WAS DISCRIMINATED AGAINST ON THE BASIS OF
REPRISAL FOR ENGAGING IN PROTECTED EEO ACTIVITY WHEN, ON
AUGUST 28, 2003, SHE WAS ISSUED A FINAL NOTICE OF REMOVAL FROM
HER POSITION OF INVESTIGATIVE ANALYST AND THE FEDERAL SERVICE

30.   Defendant placed Plaintiff on indefinite suspension, non-pay status on

December 12, 2002. Defendant based this action on the fact that Defendant had revoked

Plaintiff's national security clearance and that allegedly there were no positions in the

Eastern Region that Plaintiff could perform without a security clearance Plaintiff was

being placed in a non-pay status until further notice. Defendant's articulated rationale for

placing Plaintiff in a non-pay status is clearly self-serving, and pretext for intentional

discrimination and reprisal. Plaintiff's former position as Hotline Coordinator did not

require a national security clearance because in twelve years Plaintiff had never seen a

classified document.

31.   On April 1, 2003, Defendant agent Earl Devaney took the extreme

action of summarily firing Plaintiff without providing the minimum requirements of due

process of law. Defendant relied on a very infrequently used section of the United States

Code, 5 U.S.C. 7532 reserved for serious threats to our national security, and alleged that

Plaintiff posed such a threat. Devaney's letter stated, I have determined that your removal

from federal service is necessary in the interest of national security under 5 U.S.C. 7532.

10

Plaintiff appealed this action to the MSPB and in MSPB Decision of May 14, 2003, DC-0752-03-0262-I-1 the Administrative Judge found that the agency had acted improperly. The Administrative Judge also stated:

> I also find it significant that 5 U.S.C. Section 7532 specifically limits
> The authority for a summary suspension "in the interests of national
> Security to the head of the agency. Procedures under 7532 are harsh
> And drastic both for the employee and the agency head, who must act
> Personally in suspending the employee. In addition, 5 U.S.C. 7532
> Procedures apply primarily to an immediate threat to national security
> When normal "for cause" procedures could cause serious damage to
> National security.

The Administrative Judge also noted:

> …Neither has the agency alleged that using the procedures
> under 5 U.S.C. could cause an immediate threat of serious
> damage to national security. In this regard, the agency placed
> the appellant on paid administrative leave effective September
> 16, 2002. At that time, the appellant relinquished to her
> supervisor all agency equipment, key cards, office keys, OIG
> credentials, computer passwords, computer disks and
> investigative files. The agency denied her access to "all OIG
> offices" until further notice. With these restrictions in place,
> it would be frivolous for the agency to assert that the appellant
> was such an immediate threat to national security that normal

11

cause procedures could not be used.

32.    Defendant issued Plaintiff a proposed notice of removal on July 1, 2003. Plaintiff, through counsel, presented both an oral and written response on July 17, 2003. Plaintiff's response included a comprehensive analysis of the Douglas Factors, Douglas v. Veteran's Administration, 5 MSPR 280, 5 MSPB 313 (1981). Douglas sets forth 12 criteria to be considered in determining an appropriate and reasonable penalty. Among the factors to be considered are the Plaintiff's work history, performance record, nature of the offense (whether intentional or committed for personal gain), and past disciplinary record, and whether there was a lesser, alternative penalty that could be imposed. Plaintiff met and exceeded in the affirmative every one of the Douglas Factors.

33.    Defendant issued a final notice of removal on August 28, 2003. The Defendant's decision contained only conclusions with no citations to any evidence in Plaintiff's record. Defendant failed to establish in any connection between the removal of Plaintiff and the efficiency of the federal service. The Defendant failed to prove by a preponderance of the evidence that the penalty imposed was reasonable. Defendant stated in the final notice that because Plaintiff had failed a drug test that she lacked integrity, credibility. Defendant stated Plaintiff's use of illegal drugs, (which Plaintiff categorically denies), impair the efficiency of the service causing damage to the OIG's reputation and mission and undermine the public's confidence in the OIG. Defendant failed to produce one piece of evidence to support these contentions.

34.    Defendant does not appear to consider misuse of government property for personal gain by a number of OIG employees to include Paul Okerberg, Special Agent in Charge, and outright theft perpetrated by one of OIG's managers as behaviors that

12

compromise the integrity, confidence, and reputation of the OIG. Defendant did not hesitate to take the harshest disciplinary action against Plaintiff using, in the most cynical fashion, a purported concern for national security. Yet, Defendant does not share that same concern for national security where crimes of an equal or greater seriousness are involved. Defendant's actions are transparent and a pretext for illegal discrimination and reprisal.

35. Plaintiff had an unblemished record of outstanding federal service. Plaintiff is being punished in the most severe manner, deprivation of livelihood, because she is a black female who dared to challenge Defendant and functionaries by exercising her legitimate right to file an EEO complaint. Defendant's actions are intended to punish and retaliate against Plaintiff, and to send a chilling message to other African American employees.

36. Plaintiff was a GS-12 administrative employee whose job was to refer for further action allegations of waste, fraud, and abuse. Plaintiff never saw a piece of classified material in her employment with the OIG, and given the mission of DOI, it is highly unlikely that she or most of the other employees in the OIG would ever have access to any information that could affect national security. Defendant states that a failed drug test warrants, albeit demands Plaintiff's removal from federal service in the interest of national security. Based on common knowledge, there have been at least two Presidents of the United States and one Vice President who used an illegal substance similar to the one Plaintiff is accused of using. These individuals were not considered threats to our national security and had access to the highest levels of classified information.

37. Defendant's disparate treatment of Plaintiff when compared with other similarly situated employees, who in some instances committed far more serious crimes, is offensive to the valued principle of fundamental fairness.

38. Defendant never intended to consider the Douglas Factors, nor to give any weight to Plaintiff's outstanding work record, or consider a lesser penalty. To do so, would have been contrary to their intent, which was to carry out the final act in what had been a continuing pattern of retaliatory and discriminatory acts against Plaintiff.

IX.    COUNTS ONE THROUGH THREE

39. Defendant's agents took actions intended to demean and destroy Plaintiff's professional and personal reputation, damage her career and potential career, based on her race, sex, color, and reprisal and by so doing, caused Plaintiff to suffer pecuniary and non-pecuniary damages.

40. The aforestated actions were imposed only on Plaintiff and not on other similarly situated employees who are not of Plaintiff's race, sex, color, or who have not engaged in protected EEO activities.

41. Defendant's agent's actions were clearly intended to interfere with Plaintiff's ability to perform her job and to cause Plaintiff to feel intimidated and harassed.

42. Defendant Earl Devaney has routinely acted in a similar hostile, disparate, retaliatory manner toward African American employees, including but not limited to the following:

(a)    Taking more severe disciplinary actions against African American employees that against other similarly situated employees.

14

(b)   Denying African American employees opportunities for promotions, training, and other career enhancing assignments.

(c)   Arbitrarily assigning and reassigning African American workers in a manner inconsistent with the efficiency of the service, but intended to demoralize and force them to resign or otherwise leave.

43. Defendant's agent's actions caused Plaintiff to suffer non-pecuniary damages including anxiety, stress, depression, and other physical and emotional conditions.

44. As a direct result of the discrimination and reprisal against Plaintiff, Plaintiff Suffered emotional pain and suffering, feelings of paranoia, feelings of distrust, nightmares, sexual dysfunction, negative changes in her relationships with family and friends, and other non-pecuniary damages.

45. As a direct result of the discrimination against Plaintiff, Plaintiff has become withdrawn and indifferent toward family members and friends and has experienced a serious diminution in her quality of life.

46. As a direct result of the discrimination and reprisal against Plaintiff, Plaintiff has suffered pecuniary damages, including lost income, lost employment opportunities, out of pocket expenses for medical care, and attorney's fees.

X.   PRAYER FOR RELIEF

47. WHEREFORE, Plaintiff respectfully requests that this Court award Plaintiff the following relief:

(a)   Award Plaintiff compensatory damages to be paid by Defendant in the amount of $300,000.00 for non-pecuniary damages for emotional pain, suffering, humiliation, anxiety, stress, loss of enjoyment of life, and other non-pecuniary losses suffered by

15

Plaintiff as a direct result of the unlawful intentional discrimination and reprisal by Defendant.

(b)    Award Plaintiff compensatory damages for lost income, lost employment opportunities, out of pocket expenses, and incidental financial losses incurred by Plaintiff as a result of Defendant's unlawful discrimination and reprisal.

(c)    Reinstate Plaintiff to her position as a career federal employee, GS-12, Investigative Analyst with all the benefits and rights that pertain.

(d)    Expunge the termination action and any other negative material from Plaintiff's employment records.

(e)    Enter a declaratory judgment finding that Defendant's actions were unlawful discrimination against Plaintiff based on race, sex, color, and reprisal in violation of Title VII of the Civil Rights Act.

(f)    Order the demotion and/or removal of Defendant's agents Earl Devaney and David Montoya, who discriminated against and took reprisals against Plaintiff.

(g)    Order Defendant to post a notice in the Office of the Inspector General in conspicuous locations for not less than sixty (60) days stating that Plaintiff was discriminated against, and corrective action is being taken to remedy the wrongdoing.

(h)    Enter a judgment against Defendant and in favor of Plaintiff for reasonable attorney's fees and costs.

(i)    Award Plaintiff such further and additional relief as the Court may deem just and proper.

(j)    Order Defendant to file a Certificate of Compliance with all orders of the

Court no later than sixty (60) days after the entry of judgment.

XI.    JURY TRIAL

48.    Plaintiff demands a jury trial.

Respectfully submitted,

Wedonna L. Morris

Plaintiff, Pro Se

Wedonna L. Morris
3636 16th St. N.W.
B1014
Washington, DC 20010
202 234-8355

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to 29 C.F.R. § 1614.109. **With the exception detailed below, the complainant may not appeal to the Commission directly from this decision.** EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying the complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the hearing file and this decision. The complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order. The complainant may file an appeal whether the Agency decides to fully implement this decision or not.

The Agency's final order shall also contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. § 1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached. A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has not issued its final order within forty (40) calendar days of its receipt of the hearing file and this decision, the complainant may file an appeal to the Commission directly from this decision. In this event, a copy of the Administrative Judge's decision should be attached to the appeal. The complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency.

All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

> Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848
> Washington, D.C. 20036
> Fax No. (202) 663-7022

Facsimile transmissions over 10 pages will not be accepted.


05 1496
**FILED**

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT